## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS** | ) | **CR No. 16 – 55 S** |
| | ) | |
| **JORDAN MONROE** | ) | |

_____

## DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

NOW comes the defendant, Jordan Monroe, and moves to suppress all evidence obtained as a result of the unlawful acquisition of defendant's IP address as the result of two applications of the United States for an Order pursuant to 18 U.S.C. 2703(d).  The defendant's IP address and resulting evidence must be suppressed because the magistrate judge who signed the 2703(d) Order did not have jurisdiction over the matter and therefore did not have lawful authority to issue the Order.  The order was therefore *void ab initio* – void from the beginning – and not subject to any good faith exception.

Evidence subject to this Motion includes defendant's Internet Protocol ("IP") addresses and other evidence seized as a result of the void Orders.

A Memorandum of Law is attached in support of this Motion.

Jordan Monroe
By his attorney,

/s/ Olin Thompson,   #5684
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI   02903
(401) 528 - 4281
Olin_thompson@fd.org

1

## CERTIFICATION

I hereby certify that I caused a copy of the within to John P. McAdams, AUSA via electronic filing on this the 22nd day of June, 2017

/s/   Olin Thompson

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS** | ) | **CR No. 16 – 55 S** |
| | ) | |
| **JORDAN MONROE** | ) | |

_____

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENT**


The defendant, Jordan Monroe, moves this Court to suppress all evidence obtained as a result of the unlawful acquisition of defendant's IP address as the result of two applications of the United States for an Order pursuant to 18 U.S.C. 2703(d).  The defendant's IP address must be suppressed because the magistrate judge who signed the 2703(d) Orders did not have jurisdiction over the matter and therefore did not have lawful authority to issue the Orders.  The Orders were therefore *void ab initio* – void from the beginning – and not subject to any good faith exception.

Evidence subject to this Motion includes defendant's Internet Protocol ("IP") address and other evidence seized as a result of the void Orders.

This Memorandum of Law is attached in support of the Motion.


FACTS[1]

_____

[1] Facts for the purposes of this Motion are taken directly from various documents provided to defendant by the government in discovery.  The primary documents are the May 10, 2016 Affidavit in Support of the Search Warrant Application for ___ Jambray Ave (Exhibit C to this Motion); the December 7, 2015 Application for an Order Pursuant

In September of 2015 law enforcement became involved in a child pornography investigation into "Bulletin Board A," a website on the "Tor" network.  Bulletin Board A is an internet-based bulletin board dedicated to the advertisement, distribution and production of child pornography.  The Tor network allows for anonymous communication, masking the IP address of users.

In October of 2015 law enforcement reviewed and downloaded child pornographic content from Bulletin Board A.  On October 26, 2015 a member of the board posted text referring to a pornographic video, along with preview still images, a password to open and view the video file, and a URL (web address) where the video file was hosted.  This video file will be referred to as "Target File A" for the purposes of this motion.  The host URL will be referred to as "Target URL A."[2]

On or about October 26 law enforcement downloaded Target File A from Target URL A.  Using the password law enforcement opened and viewed the video, which contained child pornography.

Law enforcement learned that members of Bulletin Board A used various cloud-based file sharing services to "host" the files linked from Bulletin Board A.  Thus, files linked from Bulletin Board A were not necessarily hosted or stored on a server owned by Bulletin Board A, but could be remotely hosted by a filing sharing service.  Such is the case for Target File A, which was hosted by the file sharing service "FSS," an internet service provider operating and maintaining records and data in Atlanta, Georgia.

---

to 18 U.S.C. 2703(d) (Exhibit A-1 to this Motion); and the January 4, 2016 Application for an Order Pursuant to 18 U.S.C. 2703(d) (Exhibit B-1 to this Motion).
[2] Target File A and Target URL A are specifically named in ¶¶10-11 of the May 10, 2016 Affidavit.

On December 7, 2015 the Government submitted to a Magistrate Judge for the District

Court for the District of Columbia an application pursuant to 18 USC § 2703(d) for an Order

requiring FSS to disclose records relating to eleven URLs hosting child pornography files hosted

by FSS.  This application is attached hereto as Exhibit A-1.  The resulting Order is attached

hereto as Exhibit A-2.  Target URL A was one of the eleven URL's, and Target File A was one

of the eleven files subject to the application.

The application for a 2703(d) order explains Bulletin Board A, the nature of the files it

links to, and the role of FSS as an electronic communications service and/or remote computing

service.  The application explains that FSS hosts each of the 11 target files subject to the

application, and describes the content of each of those files.  The application explains that FSS

maintains records, in the ordinary course of business, relating to the uploading of each file,

including dates and times of uploading and IP addresses associated with each file upload.  The

application specifically states that FSS is "an Internet Service Provider operating and

maintaining records and data in Atlanta, Georgia."

The application, in ¶ 8, states that information requested "will help the United States to

identify and locate the individual(s) who are responsible for the events described above, and to

determine the nature and scope of their activities."

Attachment A to the application contains a list of the eleven targeted URLs, and a

description of the information sought:

"The following information related to each of the above-mentioned URLs:

1. Names (including subscriber names, user names, and screen names)
   associated with each URL
2. Address (including mailing addresses, residential addresses, business
   addresses, and e-mail addresses) associated with each URL;
3. The dates and times that the file content associated with each URL was
   uploaded to or downloaded from FSS;

5

    4.  The IP addresses associated with the uploading and/or downloading of content associated with each URL;

    5.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

The Magistrate Judge granted the Order seeking the information sought in Attachment A, and the Order was served.  On a later date FSS provided records responsive to the request. Those records purport to show that an IP address later associated with defendant (hereinafter "Target IP Address A") downloaded or attempted to download Target File A from Target URL A on October 27, 2015 at approximately 8:06:25 EDT.

Law enforcement thereafter learned that Target IP Address A was controlled by Verizon Internet Services.  Pursuant to a subpoena Verizon disclosed that on October 27, 2015 at approximately 8:06:25 EDT Target IP Address A was assigned to the wife of Defendant at __ Jambray Ave., Warwick, RI.

The same investigative process described above for identifying Target File A, Target URL A, and Target IP Address A was used again, beginning on December 31, 2015 to identify another child pornographic file, hereinafter identified as "Target File B."  Law enforcement utilized Target URL B to download Target File B.[3]  Law enforcement verified that Target File B contained child pornography (in fact three separate short videos each purporting to show juveniles in sexually explicit activity.)

As with Target URL A and Target File A, on January 4, 2016 law enforcement sought and obtained a § 2703(d) Order from the same federal Magistrate Judge for the District Court for the District of Columbia, requiring FSS, in Atlanta Georgia, to produce records relating to Target URL B.  This application is attached hereto as Exhibit B-1.  The January 4 Order is attached as

---

[3] Target File B and Target URL B are specifically named in ¶ 25 of the May 10, 2016 Affidavit

6

Exhibit B-2.  FSS again complied, producing records purporting to show that an IP address later

associated with defendant (hereinafter "Target IP Address B") downloaded or attempted to

download Target File B from Target URL B on December 31, 2015 at approximately 1:07 EDT.

Law enforcement thereafter learned that Target IP Address B was controlled by Verizon

Internet Services.  Pursuant to a subpoena Verizon disclosed that on December 31, 2015 at

approximately 1:07 EDT Target IP Address B was assigned to the wife of this Defendant at their

home on Jambray Ave., Warwick, RI.

On May 10, 2016, all of this information was set forth as probable cause to support the

issuance of a search warrant of the Jambray Ave. home.  That search warrant was executed on

May 12, 2016, resulting in the discovery of all the physical evidence in this case.


## LAW AND DISCUSSION

### The Magistrate Judge did not have legal authority to issue the § 2703(d) Orders

The Stored Communications Act, 18 U.S.C. § 2701 et seq., (the "SCA") regulates when

an electronic communication service ("ECS") provider may disclose the contents of or other

information about a customer's emails and other electronic communications to private parties.

Congress passed the SCA to prohibit a provider of an electronic communication service "from

knowingly divulging the contents of any communication while in electronic storage by that

service to any person other than the addressee or intended recipient." S.Rep. No. 99-541, 97th

Cong. 2nd Sess. 37, reprinted in 1986 U.S.C.C.A.N. 3555, 3591.

As courts have held, the SCA "protects users whose electronic communications are in

electronic storage with an ISP or other electronic communications facility." *Theofel v. Farey-*

*Jones*, 341 F.3d 978, 982 (9th Cir. 2003). It "reflects Congress's judgment that users have a

legitimate interest in the confidentiality of communications in electronic storage at a communications facility." Id. at 982.

Under 18 U.S.C. § 2701, an offense is committed by anyone who: "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided;" or "(2) intentionally exceeds an authorization to access that facility; and thereby obtains...[an] electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a)(1)-(2). However, it does not apply to an "electronic communication [that] is readily accessible to the general public." 18 U.S.C. § 2511(2)(g). See, e.g. Orin S. Kerr, A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It, 72 GEO. WASH. L. REV. 1208, 1220 (2004).

Section 2703 of the SCA, "Required disclosure of customer communications or records," regulates government access to stored communications or transaction records in the hands of third party service providers. There are four categories of information, each with differing access requirements:

- contents of wire or electronic communications in electronic storage;

- contents of wire or electronic communications in a remote computing service;

- subscriber records concerning  electronic communication service or  remote computing service; and

- basic subscriber information

The first two categories, each pertaining to actual *content* of electronic communications, require a search warrant prior to disclosure. 18 U.S.C. § 2703(a)-(c).  The fourth category, basic subscriber information, is available to the government on request.  18 U.S.C. § 2703(c)(1)(E), (c)(2).

Records of the fourth category, basic subscriber information, may be obtained with a "administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena." 18 U.S.C. § 2703(b)(1)(B)(i).

Records in the third category – the sort of records at issue here – can be disclosed by a provider to the government only where the government:

> (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;
>
> (B) obtains a court order for such disclosure under subsection (d) of [§ 2703];
>
> (C) has the consent of the subscriber or customer to such disclosure;
>
> (D) ****

Both Applications in this case, Exhibits A-1 and B-1, make clear that the United States sought the protected electronic records in this case pursuant to this provision.  "The United States of America . . . respectfully submits under seal this *ex parte* application for an Order pursuant to 18 USC § 2703(d)

18 U.S.C. § 2703(d) provides that the records may be obtained by a court order "issued by a court that is a court of competent jurisdiction" upon a showing of "specific and articulable facts showing ... reasonable grounds to believe that ... the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d); see also *In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 36 F. Supp. 2d 430 (D. Mass. 1999).

A "court of competent jurisdiction" is defined as "any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that has

jurisdiction over the offense being investigated" 18 U.S.C. § 2711(3)(A)(i); or "is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored." Thus, jurisdiction lies only in 1) the district where the offense occurred; 2) the district where the electronic service provider is located; or 3) the district where the targeted records are stored.

"Courts that have interpreted the language 'jurisdiction over the offense being investigated' have held that Congress intended it to mean territorial jurisdiction over the offense – not general jurisdiction over all federal criminal offenses" *United States v. Barber*, 184 F.Supp. 3d 1013, 1017-18 (D. Kan. April 27, 2016).  See, e.g., *United States v. Lopez-Acosta*, No. 13-CR- 275, 2014 U.S. Dist. LEXIS 106394, 2014 WL 3828225, at *3 (D. Neb. Aug. 4, 2014); *In re Search of Yahoo, Inc.*, No. 07- 3194-MB, 2007 U.S. Dist. LEXIS 37601, 2007 WL 1530071, at *5 (D. Ariz. May 21, 2007); *In re Search Warrant*, No. 05-MC-168-Orl-31-JGG, 2005 U.S. Dist. LEXIS 44507, 2005 WL 3844032, at *5 (M.D. Fla. Dec. 23, 2005).

Indeed, if the language "jurisdiction over the offense being investigated" meant anything other than territorial jurisdiction, the language would be entirely superfluous, as all federal district courts have original subject matter jurisdiction over all violations of federal law.  18 U.S.C. 3231.  See, *In re Search Warrant*, No. 05-MC-168-Orl-31-JGG, 2005 U.S. Dist. LEXIS 44507, 2005 WL 3844032, at *16.[4]

---

[4] For a discussion of the Fourth Amendment and the importance of strict statutory interpretation regarding a federal magistrate's territorial and legal jurisdiction, see *United States v. Krueger*, 809 F.3d 1109, at 1117-1135 (Gorsuch, concurring)(10th Cir, 2015).

> For my part, I do not doubt that the error here is one of statutory dimension, just as the government (sometimes) concedes. As a matter of plain language, the statute indicates that rulemakers may provide what powers a magistrate judge will have. But the statute also expressly and independently limits where those powers will be effective. Section 636(a) says that a magistrate judge "shall have" what "powers and duties" the rules and other laws may afford but only "within the district" where he is appointed to serve, "at other places" where his court may function, or "elsewhere" as authorized by law. And the problem in this case is that a magistrate judge purported to exercise a Rule 41 power to issue a warrant (a

what) but purported to exercise that power in a place (a where) that meets none of the statutory criteria.2Link to the text of the note

Put in a way your high school English teacher might appreciate, the magistrate judge is the subject of the sentence in § 636(a), his powers and duties are the objects of that sentence, and the language beginning "within the district" is a prepositional phrase that modifies (and so limits the reach of) the verb "shall have." In this way, the grammatical structure of the sentence indicates that magistrate judges shall have those powers specified by rule or other law (e.g., Rule 41), but those powers are effective only in certain specified geographic areas — and, as we've seen, none of those areas is implicated here. So malign your high school grammar class all you want and rejoice in the fact no one teaches it anymore: it holds the key to the statute before us and, really, there just isn't any better preparation for the job of understanding and giving effect to so many of the complex (often run-on) sentences that (over?) populate today's statute books.

Confirming this reading of § 636(a) is that any other interpretation would render large chunks of the law superfluous. So, for example, as best I can tell from its very occasional intimations in this direction, the government seems to think we might fairly interpret § 636(a) as delegating to rulemakers the authority to give magistrate judges any power exercisable anywhere the rulemakers might choose to specify. But reading the statute in this way would render Congress's express territorial limitations pointless. The statute might as well be written this way: "Magistrate judges shall have all powers and duties conferred or imposed by law or by the rules." Without careful attention to which phrases modify which words — without attention, yes, to the sentence's grammar — words drop out and the statute's meaning changes entirely. Following the government's occasional intimations in this direction would leave us with no more than a pastiche of the actual statute, an unorganized collection of words, the kind of guess at meaning a reader is forced to make when he can't (or won't muster the effort to) figure out which phrases modify which words.

Accepting, then, that Congress's territorial restrictions deserve to be given some effect, you might wonder if the government could at least read the statute's last geographic limitation ("elsewhere as authorized by law") as referencing the Federal Rules of Criminal Procedure, not just other statutes — and in that way as allowing a magistrate judge to exercise any power afforded anywhere Rule 41 and the rulemakers might suggest. But this interpretation would quickly prove as problematic as its predecessor, for it would still render superfluous the first two (if not all three) of Congress's express statutory geographic restrictions.

Retreating yet again, you might ask if the government could at least read the statute's territorial limitations as applying to the magistrate judge himself and not to the powers he "shall have." But this reading, too, would mangle the statute's construction — supposing that the phrase beginning "within the district . . ." modifies the subject of the sentence rather than its verb — as if the law read "a magistrate judge within his district . . . shall have the powers and duties the law prescribes." And mangling the sentence structure in this way would yield some most unlikely results as well. It would mean that a Kansas magistrate judge would have no power to act on matters back home in his district while he's vacationing in Colorado. It would mean too (and conversely) that a Kansas magistrate judge could issue warrants effective anywhere in the country (or maybe even worldwide) so long as he happens to be physically present in his assigned district, even when his physical location is immaterial to the proceedings. And it's pretty hard to imagine a reason underlying a statute like that — while it's simple enough to see the sense of the statute as

11

it was written. See generally *United States v. Strother*, 578 F.2d 397, 188 U.S. App. D.C. 155 (D.C. Cir. 1978).

Taking in the statute's legal surroundings provides further confirmation of the conclusion its plain language and logic already suggest.

Consider the statutory structure surrounding § 636(a). It reveals that § 636(a)'s three specified geographic areas are not empty categories but fit with and find content in other easily identified statutes. First, "within the district in which sessions are held by the court that appointed the magistrate judge" is linked to 28 U.S.C. §§ 81-131 (2012), which designate the boundaries of federal districts and the locations of court sessions. In turn, "other places where that court may function" points to 28 U.S.C. § 141(b) (2012), which authorizes special court sessions outside the district. And "elsewhere as authorized by law" references laws like § 219 of the Patriot Act, which empowers magistrate judges to issue search warrants for property beyond their district if certain terrorism activities might have occurred within their district. USA PATRIOT ACT, Pub. L. No. 107-56, § 219, 115 Stat. 291 (2001).

History shows, as well, that territorial restraints on the powers of magistrate judges are nothing new. In fact, Congress has always taken care to impose relatively tight territorial limits on the powers of magistrate judges and their predecessors (commissioners). See 12 Charles Alan Wright et al., Federal Practice and Procedure § 3066 (2d ed. 1997). As originally enacted, § 636(a) itself allowed magistrate judges to exercise power only within the district of their appointment. See 28 U.S.C. § 636(a) (2000). It took Hurricane Katrina and the complications it imposed on the operation of the federal courts in Louisiana before Congress was willing to extend the power of magistrate judges to "other places" in which the district court is permitted to function and "elsewhere as authorized by law." See Federal Judiciary Emergency Special Sessions Act of 2005, Pub. L. No. 109-63, 119 Stat. 1993.

Finally, even Rule 41(b) is consistent with the notion that § 636(a) imposes independent territorial restrictions on the powers of magistrate judges: that rule grants to magistrate judges the power to do certain specified things — but only if they first have "authority within the district," a question the rules themselves do not purport to answer and that can be answered only by circling back to § 636(a).

 Having said so much to this point, the question whether we have a statutorily authorized warrant lies nearly — but still not quite — behind us. So far we've seen that a careful examination of § 636(a) confirms the government's (sometimes) concession that the magistrate judge in this case violated that statutory provision by warranting a search outside the area in which his powers are effective. The problem isn't merely one of rule, it is one of statutory dimension. Still, it's not entirely clear what the extent of the statutory problem may be. It isn't because Congress has also instructed as a matter of statute that the government's statutory missteps may be disregarded if and when the government can prove that it didn't infringe the defendant's substantial rights. 28 U.S.C. § 2111 (2012). A standard that parallels the one we usually apply to infractions of the rules of procedure. See Fed. R. Crim. P. 52(a); supra n.1.

But after (sometimes) conceding a violation of § 636(a) in this case the government never follows up with a statutory harmless error argument on its own behalf. It never suggests that its violation of § 636(a) should be disregarded under § 2111. And it turns out the government doesn't attempt the argument for a clear and clearly correct reason. Section

636(a)'s territorial restrictions are jurisdictional limitations on the power of magistrate judges and the Supreme Court has long taught that the violation of a statutory jurisdictional limitation — quite unlike the violation of a more prosaic rule or statute — is per se harmful. See, e.g., *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3, 108 S. Ct. 2405, 101 L. Ed. 2d 285 (1988) ("[A] litigant's failure to clear a jurisdictional hurdle can never be 'harmless' . . . ."). Of course, courts must exercise great caution before appending the jurisdictional label to a statute: often Congress seeks to provide only claim-processing rules for the parties to choose to invoke or waive and their loss sometimes can be held harmless. See, e.g., *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). But if § 636(a)'s territorial restraints aren't jurisdictional, I struggle to imagine statutory restraints that would be.

Here's why. Statutes that speak to "statutory or constitutional power to adjudicate" rather than the rights and claims of the parties are usually treated as jurisdictional. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). And § 636(a) does just that. It makes no mention of the rights of parties or rules for processing their claims. Instead, it expressly — and exclusively — refers to the territorial scope of a magistrate judge's power to adjudicate. Context provides further clues pointing in the same direction. Section 636(a) is found in Title 28 of the U.S. Code — the same title as the statutes that define a district court's jurisdiction. Cf. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1158 (10th Cir. 2013) (Gorsuch, J., concurring), aff'd sub nom. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014). And while 28 U.S.C. §§ 1331-32 generally define the scope of the district courts' powers by reference to subject matter, § 636(a) defines the scope of magistrate judges' powers by reference to territory. In doing so, and as we have already seen (and will soon see again), the statute evinces a deeply rooted historical concern for limiting the territorial reach of magistrate judges' powers. And even if there were some lingering ambiguity left after taking in all this evidence, the title of § 636 reads: "Jurisdiction, powers, and temporary assignment." Pretty hard to ignore, especially when placed alongside all the other textual clues. In light of all this evidence it's no surprise that other circuits have also concluded that § 636(a)'s restraints are indeed jurisdictional. See, e.g., *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994). And no surprise that the government hasn't attempted to suggest otherwise in this appeal.

\*

 With that it's — finally — possible to turn to the main event in this appeal. We can now accept as correct the government's (sometimes) concession that the warrant issued in this case was unlawful, beyond the magistrate judge's statutory jurisdiction to authorize. And with that in hand we can confront directly the government's phantom warrant argument — its contention that a warrant issued in defiance of the jurisdictional territorial restraints on a magistrate judge's power under statutory law somehow remains a valid warrant under the Fourth Amendment.

When interpreting the Fourth Amendment we start by looking to its original public meaning — asking what "traditional protections against unreasonable searches and seizures" were afforded "by the common law at the time of the framing." *Atwater v. City of Lago Vista*, 532 U.S. 318, 326, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (internal quotation mark omitted). Whatever else it may do, the Fourth Amendment embraces the protections against unreasonable searches and seizures that existed at common law at the time of its adoption, and the Amendment must be read as "provid[ing] at a minimum" those same protections today. *United States v. Jones*, 132 S. Ct. 945, 953, 181 L. Ed. 2d 911 (2012).

In this case territorial jurisdiction did not exist for the magistrate to issue either § 2703(d) Order.  Though the applications for the orders purport to show jurisdiction, there is no claim of territorial jurisdiction.  Paragraph 2 of Exhibits A-1 and B-1 each make the conclusory statement "This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. See 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i)."

In each application the government provided no evidence and made no claim that the District of Columbia magistrate had actual territorial jurisdiction over the matter.  No evidence was presented that the offense being investigated – distribution of child pornography – occurred in the District of Columbia.  And, as the applications make clear, the District of Columbia is neither where the records themselves are stored, nor where the electronic service provider itself is located.

---

That principle, it seems to me, poses an insurmountable problem for the government in this case. For looking to the common law at the time of the framing it becomes quickly obvious that a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all — as ultra vires and void ab initio to use some of the law's favorite Latin phrases — as null and void without regard to potential questions of "harmlessness" (such as, say, whether another judge in the appropriate jurisdiction would have issued the same warrant if asked). So, for example, a justice of the king's bench with nationwide territorial jurisdiction afforded by Parliament could issue a warrant anywhere in the kingdom. Meanwhile, warrants issued by justices of the peace — county officials empowered to act only within their respective counties — were executable only within those same limited bounds. See, e.g., 4 William Blackstone, Commentaries *291-92; 2 Matthew Hale, Historia Placitorum Coronae 111 (1736); *Engleman v. Deputy Murray*, 546 F.3d 944, 948-49 (8th Cir. 2008). Neither can I think of any reason (and the government advances none) to think this history uninformative when it comes to our case. The principle animating the common law at the time of the Fourth Amendment's framing was clear: a warrant may travel only so far as the power of its issuing official. And that principle seems clearly applicable — and dispositive — here.

The United States Magistrate Judge, sitting in the US District Court for the District of Columbia, did not have lawful authority to issue either Order directing the disclosure of records held by FSS, an internet service provider operating and maintaining records and data in Atlanta, Georgia.

Lack of jurisdiction in the issuing magistrate renders the § 2703(d) Orders void

The violations here were not merely ministerial or technical.  It involved "substantive judicial authority" rather than simply "procedures for obtaining and issuing [the 2703(d) order]" *United States v. Krueger*, 809 F.3d 1109, at 1115 n.7 (10th Cir. 2015) (discussing the difference between substantive jurisdictional deficiencies versus ministerial errors in the context of Rule41(b) of the F.R.Crim.Pro.).

Because the SCA did not grant the magistrate the authority to issue the 2703(d) order, he was without jurisdiction to so.  Where a warrant or order is issued without jurisdiction, there is no lawful judicial approval.  See, generally, *United States v. Levin*, 186 F.Supp.3d 26, 21-22, (D. Mass. 2016)(presently on appeal, First Cir. Docket # 16-1567); citing *United States v. Houston*, 965 F. Supp. 2d 855, 902 n.12 (E.D. Tenn. 2013) ("A search warrant issued by an individual without legal authority to do so is '*void ab initio*'") (quoting *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010)); United States v. Peltier, 344 F.Supp.2d 539, 548 (E.D. Mich. 2004) ("A search warrant signed by a person who lacks the authority to issue it is void as a matter of law.") (citation omitted); cf. *State v. Surowiecki*, 184 Conn. 95, 440 A.2d 798, 799 (Mont. 1981) ("[A] lawful signature on the search warrant by the person authorized to issue it [is] essential to

15

its issuance[,]" such that an unsigned warrant is void under state law and confers no authority to act, despite existence of probable cause).

Where a warrant or order is *void ab initio* – powerless as a matter of law, any search resulting from that warrant is an unlawful one, which cannot be justified under any good faith exception.  In the context of an extra-territorial NIT warrant issued by a magistrate in violation of Rule 41(b) (the "Playpen" cases), Judge Young in the District of Massachusetts provides a thoughtful analysis of whether the good-faith exception applies where a warrant is *void ab initio* in *United States v. Levin*, 186 F.Supp. 3d 26, at 29-40 (D. Mass. 2016) attached hereto as Exhibit D.  Judge Young granted the motion to suppress in that case, finding that the good-faith exception does *not* apply where a warrant was issued without jurisdiction.

Judge Young's decision is admittedly the minority view on this issue.  A majority of courts have found that the magistrate judge who issued the NIT Warrant at issue in the Playpen cases lacked authority to do so, yet declined to suppress evidence. See, e.g., *United States v. Ammons*, No. 3:16-CR-00011-TBR-DW, 207 F. Supp. 3d 732, 2016 U.S. Dist. LEXIS 124503, 2016 WL 4926438 (W.D. Ky. Sept. 14, 2016); *United States v. Henderson*, No. 15-CR-00565-WHO-1, 2016 U.S. Dist. LEXIS 118608,  [*240]  2016 WL 4549108 (N.D. Cal. Sept. 1, 2016); *United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 U.S. Dist. LEXIS 11033, 2016 WL 337263 (W.D. Wash. Jan. 28, 2016).

As in *Levin*, a minority of courts have suppressed evidence based on a finding that the warrant was void and the good-faith exception to the exclusionary rule did not apply, such as *United States v. Croghan*, No. 1:15-CR-48, 209 F. Supp. 3d 1080, 2016 U.S. Dist. LEXIS

16

127479, 2016 WL 4992105 (S.D. Iowa Sept. 19, 2016); *United States v. Arterbury*, No. 15-CR-182-JHP, 2016 U.S.Dist. LEXIS 67091 (N.D. Okla. April 25, 2016).

Further, *Levin* is presently before the First Circuit Court of Appeals, see Docket # 16-1567.  Briefs have been submitted and the case was argued on May 3, 2017 before Appellate Judges Torruella, Selya, and Lynch.

This court should follow the guidance of *Levin* to hold that the 2703(d) orders in this case were issued without jurisdiction, that the orders were therefore *void ab initio*, that the orders cannot be rescued under the good-faith exception, and that the evidence seized as a result of those orders – specifically the IP address leading to the Jambray Ave residence, must be suppressed.

Wherefore, Mr. Monroe respectfully requests that this Court grant his Motion to Suppress.

Jordan Monroe
By his attorney,

/s/ Olin Thompson,   #5684
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI   02903
(401) 528 - 4281
Olin_thompson@fd.org

CERTIFICATION

17

I hereby certify that I caused a copy of the within to John P. McAdams, AUSA via electronic filing on this the 30th day of June, 2017

/s/   Olin Thompson